## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TROY MITCHELL,            )
                               )
         Plaintiff,       )
                               )
        v.                )     2:17cv340
                               )     **Electronic Filing**
**GEORGE GOBEL**, in his individual  )
capacity, **J. JASON ELASH**, in his   )
individual capacity, **LIBERTY**      )
**BOROUGH**, and **SOUTH ALLEGHENY** )
**SCHOOL DISTRICT,**            )
                               )
        Defendants.    )

## OPINION

Troy Mitchell ("plaintiff") commenced this action seeking redress for alleged violation of his First Amendment rights. Presently before the court are defendants' motions to dismiss. For the reasons set forth below, the motions will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by

presenting "a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." <u>Id.</u> Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. <u>Id.</u> at 1949-50; <u>see also Twombly</u>, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005) & <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 741 (1975)); <u>accord Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. <u>Iqbal</u>, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); <u>Phillips v. County</u>

of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

The complaint as read in the light most favorable to plaintiff provides the background that follows. In 2015 plaintiff was a part-time police officer who ran for the elected position of school director in the defendant South Allegheny School District. Complaint (Doc. No. 1) at ¶ 9, 13. The nomination petition he initially filed with the Elections Department of Allegheny County contained "several minor errors." Id. at ¶ 14. Notwithstanding that such minor errors are common among inexperienced candidates and often the candidate is permitted to refile the petition upon becoming aware of such errors, defendant J. Jason Elash, Esquire, "a practicing attorney barred in the Commonwealth of Pennsylvania" filed objections to plaintiff's petition and a petition to set it aside on behalf of a local citizen. Id. at ¶ 15. Elash then filed additional objections on behalf of two additional local citizens, one of whom was a democrat and one whom was a republican. Id. at ¶ 16.

Elash was a colleague, close friend and a co-worker of defendant George Gobel. Id. at ¶ 17. Gobel held multiple positions in the community: he was the solicitor of both the South

Allegheny School District ("the school district" or "the district") and Liberty Borough ("the borough"); and he also held the position of human resources officer at the school district. Id. at ¶ 6. Plaintiff believes that Gobel instructed Elash to file the objections and petition to prevent plaintiff from running for office and that Elash did so for the purpose of accomplishing the same. Id. at ¶¶ 18-19.

Gobal then embarked on a series of undertakings to dissuade plaintiff from pursuing his campaign for office. Gobel accused plaintiff of various violations stemming from his incorrect petition. Id. at ¶ 22. These included making a false statement under oath, violating borough ordinances that purportedly precluded officers from running for office, and engaging in conduct unbecoming an officer. Id.

In his capacity as borough solicitor Gobel caused the scheduling of a Loudermill hearing on the alleged violations. Id. Just prior to the scheduled hearing Gobel stated to a lieutenant in the borough police force that "[plaintiff] needs to drop out, or things will get dirty." Id. at ¶ 24. The hearing was held on March 27, 2015. Id. at ¶ 25. At the hearing Gobel stated to plaintiff: "you are not to run. I have my people picked." Id. at ¶ 26. He also accused plaintiff of engaging in prohibited activity by running for office while being a police officer and threatened to report the matter to the district attorney if plaintiff did not withdraw from the race. Id. at ¶ 27. These accusations were "false." Id. at ¶ 28.

Plaintiff was not disciplined or criminally prosecuted at the conclusion of the Loudermill hearing. Plaintiff continued in his campaign for school director. Id. at ¶ 29.

In August of 2015 Gobel began raising the issue of amending the collective bargaining agreement ("CBA") governing the borough's police force. A grant from the district attorney's office had created the funding for a full-time police officer position to act as a school resource

officer for the school district. Plaintiff was a union steward for the rank and file employees of the police force. Id. at ¶¶ 11, 31-32.

Gobel proposed an addendum to the CBA that would prohibit the school resource officer from engaging in political activity. This included holding any elected or appointed office on any level of government. Id. at ¶ 33. At that time five employees of the school district held a political office within the borough. Id. at ¶ 34. Gobel began to negotiate with plaintiff about adding the addendum to the CBA. Id. at ¶ 31.

In September of 2015, Gobel "verbally offered [] plaintiff the full-time school resource officer position on the condition that plaintiff withdraw from the race for school director." Id. at ¶ 37. Plaintiff did not respond to the offer. Id.

On September 14, 2015, Gobel drafted a petition to remove plaintiff from the race. The petition cited "the possibility of plaintiff's employment" as the resource officer and a potential conflict with the proposed addendum as the reasons for the withdrawal. Id. at ¶ 38. The addendum had not been added to the CBA. Id. at ¶ 39. Gobel met with plaintiff at the police department and informed him that the petition had to be filed that day. Id. at ¶ 40. Plaintiff decline and continued to run. Id. at ¶ 41.

On September 16, 2015, the school district adopted a resolution creating the new resource officer position. It then appointed Glenn R. Bonczek to the position. Id. at ¶ 42. On September 18, 2015, Gobel terminated negotiations with plaintiff's union regarding the addition of the addendum to the CBA. Id. at ¶ 43.

At some time in the past Liberty Borough Chief of Police Luke Rilley had informed plaintiff that he would be promoted to lieutenant upon Lieutenant Roper's retirement from the police department. Id. at ¶ 49. Lieutenant Roper retired in October of 2015. Id. at ¶ 50.

Plaintiff was not promoted.  Id.  Instead, a less experienced and less qualified officer, Ray Johnson, was promoted to lieutenant.  Id. at ¶ 51.  At the same time, a less experienced and less qualified officer, Josh Byers, was promoted to a newly created position of sergeant.  Id. at ¶ 52.

Plaintiff asked Chief Rilley why plaintiff had not been promoted to lieutenant notwithstanding the prior assurances Chief Rilley had given.  Id. at ¶ 57.  Chief Rilley responded: "[you] should not have burned [your] bridges."  Id.

All police department promotions must be voted on and approved by Liberty Borough's council.  The council voted to promote Johnson and to create the position of sergeant and promote Byers into it.  Id. at ¶ 53.

Based on the above, plaintiff has formed the following beliefs:

1) Gobel and Elash conspired to prevent plaintiff from running for office; Id. at ¶ 20;

2) Gobel scheduled the Loudermill hearing to prevent plaintiff from pursuing his candidacy for school director; Id. at ¶ 23;

3) Gobel made the threat of making things get dirty, the accusation that plaintiff was engaging in prohibited activity and the threat of reporting plaintiff to the district attorney to prevent plaintiff from pursuing his campaign; Id. at ¶ 29;

4) Gobel proposed the addendum to the CBA solely to prevent plaintiff from running for office and participating in the election process; Id. at ¶ 36;

5) Gobel used his power and influence as solicitor for the borough and human resources officer for the district to attempt to "force" plaintiff to withdraw from the race; Id. at ¶ 44;

6) Gobel used his power and influence as solicitor for the borough and human resources officer to attempt to implement policies that made plaintiff's appointment to the full-time position of school resource officer impossible; <u>Id.</u> at ¶ 45;

7) Gobel created the proposed addendum to the CBA in retaliation for plaintiff's refusal to withdraw from the race; <u>Id.</u> at ¶ 46;

8) Gobel created the proposed addendum to the CBA for the sole purpose of preventing plaintiff from continuing with his campaign; <u>Id.</u> at ¶ 47;

9) Gobel terminated the negotiations about the addendum after the district created the new resource officer position and placed Bonczek in it because the addendum was no longer a viable option for preventing plaintiff from running for office; <u>Id.</u> at ¶ 48;

10) Gobel "improperly utilized his power and influence as solicitor for the Borough to ensure the promotions of officers Johnson and Byers, instead of Plaintiff, to lieutenant and sergeant, respectively;" <u>Id.</u> at ¶ 54;

11) Gobel's actions in preventing plaintiff from being promoted to lieutenant will substantially decrease the likelihood of plaintiff attaining the rank of chief of police upon Chief Rilley's "eventual retirement;" <u>Id.</u> at ¶ 55;

12) Gobel took the actions to promote Bonczek and Byers "in retaliation for Plaintiff's refusal to withdraw from the race for school director of the [d]istrict;" <u>Id.</u> at 56; and

13) Chief Rilley's remark about plaintiff burning his bridges was a reference to plaintiff's interactions with Gobel and plaintiff's refusal to withdraw from the race. <u>Id.</u> at ¶ 58.

Undaunted, plaintiff proceeded with his candidacy for school director. <u>Id.</u> at ¶¶ 21, 30, 41, 58. He was elected to the position "sometime in December of 2015." <u>Id.</u> at ¶ 59.

At count I plaintiff advances a claim for violation of his First Amendment right of freedom of expression against Gobel and the borough. Count II seeks recovery for conspiracy in violation of § 1983 against Gobel and Elash. Count III raises a claim of retaliation in violation of the First Amendment against Gobel, the borough and the district.

Defendants move to dismiss for a plethora of reasons. The school district and Gobel as human resources officer contend that a claim of retaliation based on plaintiff's failure to be given the newly created school resource officer position cannot be maintained because the "Pennsylvania School Code of 1949 expressly prohibits a school director from also being an employee of the District." Brief of South Allegheny School District and George Gobel (Doc. No. 17) at 5 (citing 24 P.S. § 3-324). In addition, Gobel could not set policy for the district or otherwise act as a binding "policymaker" for it. And Gobel lacked such authority as solicitor for the borough in any event.

Gobel as solicitor of the borough asserts that all of the actions identified by plaintiff were lawful and permissible. That is, the objections filed by Elash were valid and permitted filings by fellow citizens; the Loudermill hearing was scheduled to protect plaintiff's rights and provide him with an opportunity to be heard before a decision about any appropriate adverse action was taken; the hearing vindicated plaintiff's position; the addendum was a proper subject for discussion between the solicitor and the union steward; at the time plaintiff had an interest in the human resource position, the addendum was only a proposal and plaintiff attaining the school district position was only referenced as a possibility; and only borough council could make promotions within the police department. Beyond the obstacles created by these points, Gobel as a solicitor for the borough contends he was not a state actor or otherwise capable of acting under color of state law within the meaning of § 1983. In addition, all historical actions taken by Gobel

were permissible and did not curtail or hinder plaintiff's campaign in any cognizable way, thereby defeating any contention that plaintiff suffered an impingement of his First Amendment right to freedom of expression. These same reasons defeat a claim of conspiracy. Finally, Gobel asserts that as borough solicitor he lacked any authority to make decisions about management or personnel matters within the police force. Such matters were at all times within the exclusive province of borough council.

The borough and Gobel in his capacity as solicitor contend plaintiff's claims fail to identify an adverse action that would support a First Amendment violation. Further, Gobal did not act under color of state law and lacked the ability to be a final policymaker or implement a custom, policy or practice that had the force of law. Plaintiff's allegations fail to identify any conduct that can be held to constitute a violation of plaintiff's First Amendment rights in that his petition was subject to challenge based on the errors therein, a <u>Loudermill</u> hearing was a means of protecting plaintiff's rights, a solicitor cannot hire or fire borough employees, a school director is prohibited from holding another employment position within the school district, and plaintiff's assertions about being passed over for employment opportunities is founded on nothing more that shear speculation. From the borough and solicitor Gobel's perspective, this state of affairs renders any claim against the borough deficient because a policy, custom or practice within the meaning of Monell has not been advanced and a civil conspiracy cannot be maintained where a constitutional violation has not been pled. Finally, the borough and solicitor Gobel assert that at the very least any purported right that plaintiff has asserted was not clearly established.

Plaintiff does not take issue with the district's contentions that the school code prohibits a school director from being employed by the district during his or her elected term. Plaintiff likewise does not challenge the district's assertions that only the board of directors can take

official action on behalf of the district and Gobel could not create binding policy for the district in his capacity as human resource officer. Thus, plaintiff concedes that his claim against the district is misplaced. He nevertheless continues to advance his claims against Gobel.

In response to Gobel's separate motion, plaintiff concedes that his allegations fail to "raise[] a legitimate argument regarding plaintiff's Freedom of Expression claim." He thus acknowledges that a claim for violation of his freedom of expression as alleged at count I cannot be maintained. Plaintiff otherwise seeks to maintain his claims against Gobel.

More specifically, plaintiff contends that as borough solicitor Gobel was a policymaker for the borough and he used that policymaking authority to prevent plaintiff from exercising his constitutionally protected right to participate in the electoral process. He also used it to retaliate against plaintiff in his employment with the police department when plaintiff refused to withdraw from the race. He did this by using "his power and influence as solicitor" to "join[] with Defendant Borough's Council to ensure that Plaintiff was not promoted to the rank of either lieutenant or sergeant." Plaintiff's Brief in Opposition to Gobel's Motion (Doc. No. 28) at 4, 5, 9. Finally, plaintiff asserts that the right to be free from retaliation for participation in the political process "has been so established since the passage of the First Amendment in the original Bill of Rights." Id. at 10.

In response to the borough's motion, plaintiff further contends that he has set forth a viable First Amendment retaliation claim against the borough and Gobel. He argues that under the standard of review, the court may only consider whether the plaintiff engaged in political activity. This is because any consideration of factual elements of adverse action and causation purportedly are beyond the scope of review at the pleading stage. In this regard plaintiff maintains that Gobel acted as a policymaker in his capacity as borough solicitor, thereby

exposing himself and the borough to liability. Gobel did this when he attempted to implement a policy for the sole purpose of preventing plaintiff from running for office and "when he improperly utilized his power and influence as solicitor for Defendant Borough" to thwart plaintiff's promotion within the police department. Plaintiff's Brief in Opposition to Liberty Borough and George Gobal's Motion (Doc. No. 27) at 4, 7, 8, 9, 10. Plaintiff thus seeks to proceed on these premises. Id. at 11.

All aspects of plaintiff's Freedom of Expression claim at count I must be dismissed. The record demonstrates that plaintiff's nomination petition contained errors. State law authorized the community citizens to file challenges to it, which they did. See 25 P.S. § 2937.[1] Plaintiff was not inhibited in his ability to move through that process and bring his petition into compliance. Thus, this conduct did not violate plaintiff's rights to engage in the electoral process.

The record likewise demonstrates that the scheduling of a Loudermill hearing did not impede plaintiff's pursuit of his candidacy. If anything, this measure can only be said to be a salutary undertaking to protect the integrity of plaintiff's reputation. Municipal employment as a police officer in Pennsylvania is governed by the protection afforded under 53 P.S. § 46190 and any applicable collective bargaining agreement, such as the one referenced by plaintiff in his complaint. Given this relationship and setting, a hearing was necessary before any discipline

_____

[1] This statute provides in relevant part:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.

Id.

could be imposed based on the implications from plaintiff's filing an inaccurate petition. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (an individual's opportunity for a hearing before being deprived of any significant property interest is part of "the root requirement" of the Due Process Clause). As part of the pre-deprivation process, the employee is entitled to (1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence and (3) an opportunity to present his side of the story. <u>Id.</u> at 546; <u>accord</u> <u>McDaniels v. Flick</u>, 59 F.3d 446, 454 (3d Cir. 1995) (same).

The <u>Loudermill</u> hearing was mandated for plaintiff's protection. According to the allegations of the complaint, it worked precisely as it was supposed to: as a result of the hearing plaintiff was not subject to discipline and was permitted to continue with his campaign. Thus, this identified conduct cannot serve as a basis to establishing that plaintiff's First Amendment right to engage in the electoral process was violated.

Gobel's proposed addendum to the CBA was just that: a proposal for discussion with the union. Plaintiff refused to withdraw his petition, continued with his campaign and won the position. Plaintiff's belief that Gobel advanced the addendum solely for the purpose of interfering with plaintiff's right run for office does not render this conduct actionable as a violation of plaintiff's right to engage in political expression.

Finally, the fact that Gobel made his proposed support for plaintiff getting the contemplated school resource officer position contingent on plaintiff withdrawing for the race for school director has no legal implications favoring plaintiff's pursuit of this lawsuit. The Pennsylvania School Code of 1949 expressly prohibits a school director from being an employee of the school in which he or she is elected. Pennsylvania law provides:

> (a) No school director shall, during the term for which he was elected or appointed, as a private person engaged in any business transaction with the school district in which

he is elected or appointed, be employed in any capacity by the school district in which he is elected or appointed, or receive from such school district any pay for services rendered to the district . . . .

24 P. S. § 3-324.  This provision of the school code expressly prohibited plaintiff from maintaining the elected position of school director and holding the paid employment position of school resource officer.

Of course, Gobel had an obligation to the borough to support a candidate who could perform the new position of school resource officer for more than a few months.  Given that plaintiff's election would have meant he would have been forced to resign from the newly created position or give up the elected office to which he had just been elected (assuming plaintiff won the election, which was not known at the time), the fact that Gobel made his support for plaintiff being placed into the human resource officer position contingent upon plaintiff withdrawing from the election for school director cannot be viewed as more than Gobel's astute and proper performance of his duties as solicitor for the school district.

It follows that the events that plaintiff identifies as interfering with his run for political office are all matters which were proper courses of conduct for those involved.  None of the events constituted materially adverse actions that hindered or otherwise affected plaintiff's campaign.  Plaintiff's claim for interference with his freedom of expression in violation of the First Amendment will be dismissed against all defendants.

Plaintiff's efforts to portray Gobel as acting under color of state law also are without foundation.  In general, § 1983 does not itself create substantive rights, but instead provides a

vehicle for vindicating a violation of a federal right.[2]  Groman v. Township of Manalapan, 47

F.3d 628, 633 (3d Cir. 1995).  A cause of action under § 1983 has two elements: a plaintiff must

prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the

United States (2) that was committed by a person acting under color of state law.  Kneipp v.

Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077

(3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must

demonstrate that a person acting under color of law deprived him of a federal right.") (citing

Groman, 47 F.3d at 633).

Plaintiff seeks to establish the second element by highlighting the fact that Gobel was the

solicitor for the borough.  He then characterizes Gobel as a "policymaker" because prior

precedent has recognized that a solicitor's duties to render legal opinions, draft ordinances and

negotiate contracts for municipal approval constitutes a role where the advice of counsel is

brought to bear on "shaping policy decisions."  Plaintiff's Brief in Opposition to George Gobel's

Motion (Doc. No. 28) at 3 (quoting Wetzel v. Tucker, 139 F.3d 380, 385-86 (3d Cir. 1998).  In

the alternative, plaintiff asserts that Gobel invoked the coercive force of the borough by joining

with borough council to ensure plaintiff was not promoted within the police department.  Id. at 5.

Neither of plaintiff's approaches are grounded in a factual basis that plausibly shows

Gobel acted under color of state law.  In Pembaur v. Cincinnati, 475 U.S. 469 (1986), the

Supreme Court recognized the principle that

---

[2] Section 1983 creates liability against "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws."  42 U.S.C. § 1983.

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body — whether or not that body had taken similar action in the past or intended to do so in the future — because even a single decision by such a body unquestionably constitutes an act of official government policy.

475 U.S. at 480. To utilize this approach there must be a basis in the record to establish that the official whose decision is in question had final policy-making authority for the governmental entity with regard to the specific matter at hand. Id.

In order to prove that an individual has final policy-making authority under this approach, and thus can be said to have acted with the authority of the municipality in taking any particular action, a party must show that (1) as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, McMillian v. Monroe County, 520 U.S. 781, 785 (1997) and City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988), and (2) the official's authority to make policy in that area is final and unreviewable. Praprotnik, 485 U.S. at 127 ("the authority to make municipal policy is necessarily the authority to make final policy") (citing Pembaur v. Cincinnati, 475 U.S. 469, 481–484 (1986)); accord Hill v. Borough of Kutstown, 455 F.3d 225, 245-46 (3d Cir. 2006). In contrast, "if a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of [constituting official municipal action or policy]." Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003).

Plaintiff cannot meet these standards. He points to the grant of authority given to municipal solicitors. The relevant Pennsylvania statue provides:

(a) General rule. --The borough solicitor shall:

(1) Prepare or approve, if directed or requested to do so by council or the mayor, any bonds, obligations, contracts, leases, conveyances, ordinances and assurances to which the borough or any department of the borough may be a party.

(2) Commence and prosecute all actions brought by the borough for or on account of any of the estates, rights, trusts, privileges, claims or demands of the borough, as well as defend the borough or any borough officer against all actions or suits brought against the borough or borough officer in which any of the estates, rights, privileges, trusts, ordinances or accounts of the borough may be brought in question before any court in this Commonwealth.

(3) Furnish the council or committees of the council, the mayor or the head of a department, upon request, with an opinion in writing upon any question of law which may be submitted by any of them in their official capacities.

(4) Perform every other professional act incident to the office which the borough solicitor may be authorized or required to do by the council or the mayor.

8 Pa. C. S. § 1117.

With the exception of commencing or defending law suits involving the municipal entity, this grant of formal authority limits a solicitor's ability to take binding action to situations where council or the mayor has directed or authorized the same. Equally telling here is the fact that another provision of Pennsylvania law exclusively places the ability to hire, promote and terminate municipal police officers with borough council. See 8 Pa. C. S. § 1121(a) (authorizing borough council to create police departments and, subject to civil service provisions, appoint, designate rank, remove, suspend and reduce in rank officers within the department(s)).

Any action by Gobel with regard to plaintiff's rank within the police department was subject to review by borough council. In other words, Gobel actions with regard to employment decisions within the police department necessarily were subject to review under state law and thus he was not a "policymaker" for the purpose of establishing § 1983 liability. Cf. Brennan, 350 F.3d at 428 (the existence of discretionary review under state law of formal governmental action by a subordinate forecloses the use of final policymaking authority to establish § 1983

16

liability). Consequently, plaintiff cannot use the principle of "policymaker" to establish state action by Gobel.

Plaintiff's alternative theory likewise is misplaced. Plaintiff repeatedly argues that Gobel joined forces with borough council to ensure that plaintiff was not promoted within the police department. This argument is a mismatch of incoherent legal theory and vague legal conclusions. It thus fails for multiple reasons.

Plaintiff has averred the following to support his claim that Gobel joined forces with the borough in voting on the promotions of Johnson and Byers: in the borough, all police department promotions must be approved by a borough council vote; and "Defendant Gobel improperly utilized his power and influence as solicitor for the Borough to ensure the promotions of officers Johnson and Byers, instead of Plaintiff, to lieutenant and sergeant, respectively." Complaint (Doc. No. 1) at ¶¶ 53, 54. Gobel did this "in retaliation for Plaintiff's refusal to withdraw from the race for school director of the District." Id. at 56.

The United States Court of Appeals for the Third Circuit has reiterated on a number of occasions that the following three step process is applicable in reviewing the adequacy of pleadings of this nature:

> First, [the court] must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675, 129 S. Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S. Ct. 1937. See also Burch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

Connelly v. Lane Construction Corp., 809 F.3d 780, 786 (3d Cir. 2016). The inquiry is context specific and plaintiff need not meet the evidentiary burdens of proof at this stage. It is

enough for a plaintiff to set forth factual matters that raise a reasonable expectation that discovery will reveal evidence to meet the elements necessary for recovery. Id. at 788-89.

In undertaking this review a distinction is to be drawn "between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if 'unrealistic or nonsensical,' 'chimerical,' or 'extravagantly fanciful.'" Id. (citing Iqbal, 556 U.S. at 681). In other words, outlandish allegations of historical fact are entitled to "a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a . . . claim' or other legal conclusion." Id. at 790.

The element in question is plaintiff's ability to establish that Gobel engaged in state action. The Supreme Court has observed that the criteria for determining the presence of state action lacks rigid simplicity.[3] Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001). Over the years the Court has established a number of approaches to answer the general question of whether there is a sufficiently "close nexus between the State and the challenged action [so] that seemingly private behavior may be fairly treated as that of the State itself." Id. (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 349 (1974)). It has identified a host of factors that can "bear on the fairness of such an attribution," such as when (1) the challenged activity results from the state's exercise of coercive power, (2) the state provides significant encouragement, either overt or covert or (3) a private party becomes a willful participant in joint activity. Id. (collecting cases in support).

_____

[3] The Court has explained that conduct which constitutes "state action" is also "action under color of state law and will support a suit under § 1983." Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982).

18

In Crissman v. Dover Downs Entertainment Inc., the United States Court of Appeals for the Third Circuit followed Brentwood's approach to evaluating allegations of state action by private parties. 289 F.3d 231, 239 (3d Cir. 2002). Regardless of whether the approach is treated as "tests" or "facts," "Brentwood directs courts to focus on the fact-intensive nature of the state action inquiry, mindful of its central purpose: to assure that constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'"[4] Id. (quoting Brentwood, 531 U.S. at 295 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original)). In other words, the basic question is whether the challenged act can be "fairly attributed to the state." Crissman, 289 F.3d at 239 (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)); accord Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974) (The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself.).

As an initial matter, plaintiff's effort to satisfy the state action requirement as to Gobel through the action of borough council in promoting Johnson and Byers necessarily is dependent upon plaintiff demonstrating that borough council engaged in actionable conduct when it voted on the promotions. This is so because a municipal entity cannot be held liable under § 1983 based solely on the fact that it employs the individual who has violated a citizen's constitutional rights. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978). To the

---

[4] The Court pointed out in Lugar that it has never been clear "[w]hether these different tests are actually different in operation or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in [each] situation." 457 U.S. at 939; see also Groman, 47 F.3d at 639 n.16. Brentwood appears to embrace the second understanding. Crissman, 289 F.3d at 239 n.12.

contrary, "[a] municipality or other local government may be liable under § 1983 [only] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, -- U.S. --, 131 S.Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692).

It has become settled law that such entities "are responsible only for 'their own illegal acts' [and] are not vicariously liable for the acts of their employees." Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, liability against such an entity may not be established by the *respondeat superior* doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. Monell, 436 U.S. at 694; see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) ("municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting Monell, 436 U.S. at 694).

Here, if a majority of the council members voted on the promotions of Johnson and Byers for non-retaliatory reasons, then plaintiff cannot establish that the borough's decision was a retaliatory measure in response to his campaign. See Versarge v. Township of Clinton, N.J., 984 F.2d 1359, 1363 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). In contrast, if plaintiff has advanced a plausible showing that a majority of borough council voted on the promotions in order to effectuate the retaliatory motive plaintiff ascribes to Gobel, then the state action requirement to maintain a § 1983 claim against Gobel would be present. Plaintiff bears the burden of proving this. West v. Atkins, 487 U.S. 42, 48 (1988).

In arguing that Gobel joined forces with borough council, plaintiff acknowledges, as he must, that "[i]t is well-settled that an attorney does not act under color of state law simply by virtue of representing a state actor as a client or by acting as solicitor on behalf of a municipality or public school board." Anderson v. Perhacs, 2013 WL 1336124, *4 (W.D. Pa. March 29, 2013) (McLauglin, J.) (citing Angelico v. Lehigh Valley Hospital, 184 F.3d 268, 277 (3d Cir. 1999) (other citations omitted).   Instead, "the attorney or solicitor must in some manner be 'clothed in the authority of state law' at the time of the alleged constitutional violation in order for § 1983 liability to attach." Id. (citing O'Hanlon v. City of Chester, 2002 WL 393122, *4 (E.D. Pa. March 12, 2002) (quoting Groman v. Township of Manalapan, 47 F.3d 628, 639 n. 17 (3rd Cir.1995)); accord Abbott v. Latshaw, 164 F.3d 141, 146 93D Cir. 1998) ("to act 'under color of state law' requires that the person liable for the section 1983 violation 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting West, 487 U.S. at 48).

In determining whether a solicitor was sufficiently clothed in the authority of the state with respect to a particular action, the courts have primarily focused on the following inquiries: (1) whether the attorney has actually invoked the coercive force of the state to accomplish his or her client's goal, as opposed to merely implying or threatening state legal action; and (2) whether the attorney has gone beyond his or her traditional role as a provider of legal advice and begun to actually make official policy decisions that are ordinarily left to the state.  See, Angelico, 184 F.3d at 277; Belkowski v. Kruczek, 2010 WL 1433099, *3 (W.D. Pa. April 7, 2010).

Plaintiff has failed to advance a plausible showing as to either inquiry.  Plaintiff has not pointed to any formal state action or function that Gobel invoked, such as creating a custom or policy regarding how borough council would consider promotions within the police department.

Nor has he set forth facts to support the inference that Gobel went beyond his traditional role and made policy decisions in his own right. See e.g. Frompovicz v. Township of South Manheim, 2007 WL 2908292, *7-8 (M.D. Pa. Oct. 4, 2007) (solicitor who evaluated and then established standards for judging applications for zoning permits could be found to have acted under color of state law).

It appears that plaintiff is attempting to utilize the joint activity prong to attribute the Gobel's purported retaliatory motive to the actions of borough council. As a general matter, an attorney's role as a solicitor cannot supply the predicate to support this avenue to state action. See Belkowski, 2010 WL 1433099 at *3 ("the common law within this Circuit holds that a lawyer's role as a solicitor or municipal attorney does not automatically make him or her a state official or actor.") (citing Conklin v. Warrington Township, 2008 WL 2704629 at *7 n. 11 (M.D. Pa. July 7, 2008); Willis v. Carroll Township, 2008 WL 644762 at *5 (M.D. Pa. March 5, 2008); and Spradlin v. Borough of Danville, 2005 WL 3320788 at * 3 (M.D. Pa. Dec. 7, 2005), aff'd, 188 F. App'x. 149 (3d Cir. 2006)). Thus, Gobel's relationship with his municipal client does not in itself supply a basis to infer or assume that he and borough council joined forces to retaliate against plaintiff. Something more is needed.

This leaves for consideration the contention that plaintiff joined in a conspiracy with members of borough council. See Pellegrino Food Products Co., Inc. v. City of Warren, 136 F. Supp.2d 391, 409 (W. D. Pa. 2000) ("An attorney may become a state actor, however, by conspiring with a state official to deprive a person of his or her constitutional rights.") (citing Messa v. Allstate Ins. Co., 897 F. Supp. 876, 882 (E.D. Pa.1995); Kovacs v. Goodman, 383 F. Supp. 507, 509 (E.D. Pa. 1974), aff'd 515 F.2d 507 (3d Cir. 1975)). To advance a § 1983 conspiracy claim, a plaintiff must aver "factual allegations of combination, agreement, or

understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."  <u>Pellegrino</u>, 136 F. Supp.2d at 409 (citing <u>Hammond v. Creative Financial Planning Org. Inc.</u>, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992). There must be an agreement of two or more persons to "do a criminal act, or to do [a lawful] act by unlawful means or for an unlawful purpose."  <u>Id.</u> (citing <u>Spencer v. Steinman</u>, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citing <u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814 (3d Cir. 1974) ("A civil conspiracy is combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose.") (citing <u>Landau v. Western Pennsylvania National Bank</u>, 282 A.2d 335 (Pa. 1971)).

Here, the complaint is bereft of factual allegations that support an agreement between Gobel and a majority of borough council to vote on the promotions of Johnson and Byers in order to effectuate Gobel's motive of retaliation.  Turning to the specific averments, the only averment is that Gobel used his power and influence to produce such a result.  This averment is nothing more than a legal conclusion.  Thus, it is not entitled to a presumption of fact. <u>Connelly</u>, 809 F.3d 789 (Of course, "the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point.") (citing <u>Peñalbert–Rosa v. Fortuño–Burset</u>, 631 F.3d 592, 595 (1st Cir. 2011)).

Beyond the above referenced legal conclusion, plaintiff's complaint is remarkable for what it fails to contain.  The individual borough council members who joined forces with Gobel to effectuate his illegal motive of retaliation are not named as defendants.  The specific conduct of such individuals that will support an inference that they knowingly joined in Gobel's plan to inflict punishment on plaintiff has not been identified.  The basic steps about

how the purported illegal agreement was carried into practice have not been alleged. And so on and so forth.

The Third Circuit long ago acknowledged that conclusory allegations of concerted action without facts actually reflecting such action is insufficient to state a conspiracy claim. See Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir.1998), cert. denied, 527 U.S. 1035 (1999) (citing Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998), cert. denied, 525 U.S. 930 (1998)); accord Pellegrino, 136 F. Supp.2d at 410 (dismissing § 1983 conspiracy claim against attorney defendants because, among other things, the complaint failed to set forth the requisite showing as to "the existence of any joint action, concerted effort, or even a general understanding between the law firm and the City Defendants.") (citation omitted). When viewed under the applicable standards, all plaintiff can muster in support of his claim that the promotion of Johnson and Byers was in retaliation for his decision to spurn Gobel's requests and continue with his campaign is a legal conclusion that Gobel's joined forces with borough council and used his influence to make it so. Of course, alleging that this is so in such a manner does not make it so for the purposes of surviving the current legal challenges.

The court having 1) reviewed plaintiff's allegations as they relate to the borough council's vote to promote Johnson and Byers over plaintiff and 2) found them to be insufficient to support the contention that the requisite number of borough council's members joined in and perfected a concerted understanding that plaintiff was to be passed over due to his failure to heed Gobel's directive to withdraw from the race for school director, it is clear that plaintiff's claims against Gobel must be dismissed for failure to set forth a plausible showing that he was acting under color of state law. Consequently, the claims against Gobel must be dismissed.

The claims against the borough will be dismissed for the same reasons. While the record will support the inference that Gobel harbored animus toward plaintiff for not withdrawing from the race, there is nothing to show that any such animus was brought into play in the police force matters before borough council and/or that such animus was a but for cause of council's votes in promoting Johnson and Byers. Without sufficient factual averments to support such a showing, plaintiff cannot proceed with a <u>Monnell</u> claim against the borough because it would at most amount to vicarious liability.[5]

For the reasons set forth above, defendants' pending motions to dismiss will be granted and all claims against all defendants will be dismissed.[6] An appropriate order will follow.

<u>Date: March 28, 2018</u>

> s/David Stewart Cercone
> David Stewart Cercone
> United States District Judge

cc:     Joel S. Sansone, Esquire
        Elizabeth Tuttle, Esquire
        Danielle M. Vugrinovich, Esquire
        Estell K. McGrath, Esquire
        April L. Cressler, Esquire
        Paul Alexander Custer, Esquire
        Timothy R. Smith, Esquire

        (*Via CM/ECF Electronic Mail*)

---

[5] The lack of any viable theory of state action also forecloses any claim against Elash.

[6] A portion of plaintiff's claim at Count III is being dismissed based on the failure to meet <u>Twombly</u>'s plausibility standards. Under these circumstances a plaintiff generally is entitled to seek to cure the deficiencies by amendment unless attempting to do so would be futile. <u>Phillips</u>, 515 F.3d at 236 (citing <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002)). At this juncture it cannot be said with legal certainty that permitting leave would be an exercise in futility. Consequently, we will refrain from entering a final judgment order of dismissal pursuant to Rule 58 for ten business days in order to permit plaintiff to seek leave to file an amended complaint curing the myriad of deficiencies noted above.